## PUBLIC UTILITIES COMPANY *v.* WALDEN.

[No. 9,686.   Filed March 25, 1919.]

1. STREET RAILROADS.—*Collisions.—Action.—Complaint.—Contributory Negligence.*—In an action for personal injuries sustained by plaintiff in a collision between his automobile and a street car, the complaint is not bad as showing contributory negligence, because alleging, in charging defendant's negligence, that the street was straight and unobstructed for a quarter of a mile from the scene of the accident, where it also averred facts showing that the street car approached plaintiff from the rear so that he did not have the same opportunity as the motorman of seeing the impending danger.   p. 624.

2. APPEAL.—*Review.—Verdict.—Conflicting Evidence.*—A verdict based on conflicting evidence cannot be disturbed on appeal on the weight of the evidence.   p. 626.

3. STREET RAILROADS.—*Collisions.—Injuries to Driver of Automobile.—Last Clear Chance.—Instructions.*—In an action for personal injuries sustained by plaintiff in a collision between his automobile and a street car, instructions relating to the doctrine of last clear chance, *held*, when taken as a whole, to state the law correctly.   p. 626.

4. STREET RAILROADS.—*Collisions.—Injuries to Driver of Automobile.—Last Clear Chance.—Instructions.*—In an action for personal injuries sustained by the driver of an automobile in a collision with a street car the giving of an instruction that, if plaintiff was negligent in going into a place of danger on defendant's track, and the motorman saw him there, and could have avoided the danger by the use of reasonable means at his command, but did not do so, defendant would be liable even though plaintiff's negligence continued to the instant of his injury, was reversible error.   p. 627.

5. STREET RAILROADS.—*Tracks.—Use by Public.—Rights.*—In view of the fact that street cars run on a fixed track, are operated for the convenience of the public, a street railroad company has a paramount or superior right of way over its tracks between street crossings, whenever its rights conflict with those of a traveler in the street, to the extent that he must reasonably give way to a car which he knows is approaching and desires to pass him.   p. 628.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by William L. Walden against the Public Utilities Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Robinson & Stillwell,* for appellant.

*G. V. Menzies, John R. Brill, F. H. Hatfield* and *John W. Brady,* for appellee.

McMAHAN, J.—This is an action for damages for injuries which appellee suffered by reason of an auto delivery truck which he was driving being struck by one of appellant's street cars, which the complaint alleges was being run along and over one of the public streets in the city of Evansville in a negligent manner, and in violation of an ordinance of said city limiting the speed of appellant's cars to twelve miles an hour at the place of the collision. Among other things, the complaint alleges that the street on which the collision took place was straight, level and free from all obstructions for a distance of at least one-fourth of a mile from the point where the accident took place, so that appellant's servants in operating cars on said street could see the place where the accident occurred, and could see persons and vehicles for a distance of a quarter of a mile before a car would reach the point of the accident.

The appellant's demurrer to the complaint was overruled. It is argued that, if the condition of the street was such that appellant's servants could 1. have seen persons or vehicles at all times for a distance of one-fourth of a mile from the place of the accident, the appellee could also, by the use of ordinary care, have seen the approach of the street car in time to have avoided the injury, and, having failed to do so, he was guilty of contributory negligence. We cannot say so as a matter of law. The

street car was going east and was approaching appellee from the rear. The motorman's view was unobstructed. If the appellee had been going west so that the street car would have been in front of him and in the line of his vision, and so that his opportunity of seeing was equal to that of the motorman, there would be some force in appellant's contention.

The complaint is not open to the objection urged against it, and the demurrer was properly overruled.

The appellant, by its motion for a new trial, challenges the sufficiency of the evidence to support the verdict. There is a substantial conflict in the evidence. One or two of the appellant's witnesses testified that the appellee raced with the street car nearly half a block, the street car and his delivery truck running along side by side, and only five or six feet apart, and while the street car was running along unchecked in its speed, appellee, without any previous intimation of his purpose, suddenly cut across the street car track, only two or three feet in front of the car. The appellee and other witnesses testified that the appellee got into his delivery wagon 200 feet west of the accident, while the street car was 500 feet or more from him, standing still, taking on or discharging passengers; that appellee drove east about 190 feet at the rate of ten or twelve miles an hour; that he then turned across the track, and that as he did so he slackened his speed to five or six miles an hour, looking down the track to the west, and that he then proceeded to drive across the track; that just about the time he reached the track the street car struck his truck and caused the injury complained of. It further appeared in the evidence that the top of the delivery truck came forward to the front edge of

the seat on which the appellee was sitting, and so obstructed his view that he was unable to see further than fifty or sixty feet toward the west. Some of the witnesses testified that the street car was being run at a speed of about twenty-five miles an hour. Appellee testified that when he looked to the west, just as he turned to cross the street car track, he could see fifty or sixty feet along the track, and that he could see no street car at the time. Appellant's motorman testified that he saw appellee more than 200 feet west of the point of collision and kept him in view until he was struck by the street car. One witness testified that just before the collision occurred the motorman was looking off toward the north side of the street. The evidence further discloses that the accident took place in the city of Evansville, and that there was an ordinance in force at that time limiting the speed of street cars at that place to

2.  twelve miles an hour. It was the province of the jury to determine where the preponderance of the evidence lay, and, it having done so, we cannot disturb its verdict on the weight of the evidence.

Appellant contends that the court erred in giving instructions Nos. 11, 12, 13 and 16, requested by the appellee, and No. 3, given by the court on its own motion. Each of these instructions related to the doctrine of "last clear chance." No. 3, given by the court on its own motion, is not very well worded, but when read in connection with Nos. 11, 12 and 13, given at the request of the appellee, its giving is harmless.

Instruction No. 11, given by the court at the request of appellee, told the jury that, if the motorman actually saw the appellee and realized the peril to

3.  which he was about to be exposed, it then became the duty of the motorman to use ordinary

care to stop the car and prevent the injury. No. 12 was to the effect that, if the motorman saw the appellee and saw that he was about to drive upon and across the tracks, and realized the appellee's peril, it was then the duty of the motorman to use ordinary care to discover if appellee was unconscious of his danger, and in that event to use all the means at hand and under his control, consistent with the safety of the operation of his car and the passengers thereon, to stop the car and avoid the injury. No. 13 informed the jury what facts the jury might take into consideration in determining whether the motorman saw and observed the appellee and the danger he was about to be exposed to in time to have prevented the injury.

These instructions, taken as a whole, state the law correctly, and the court committed no error in giving them. Instruction No. 16, given at the request of the appellee, is as follows: "If you find, from the evidence, that the plaintiff was negligent in going into a place of danger on defendant's track, and defendant's motorman saw plaintiff in such place of danger, and could have avoided the danger by the use of reasonable means then at his command, but did not do so, the defendant would be liable, even though the plaintiff's negligence continued to the instant of his injury."

This court, in *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 585, 96 N. E. 973, 98 N. E. 1091, said: "If the want of care on the part of the defendant consists of a like failure to observe the dangerous situation of the plaintiff, and if such want of due care on the part of both continues until the injury occurs, or becomes so imminent that neither can prevent it, the plaintiff cannot recover.

Under such circumstances the opportunity of the plaintiff to observe the danger is equal to that of the defendant, and the duty to discover the danger and avoid the injury by the exercise of due care rests equally upon him and the defendant. If the opportunity of the plaintiff to avoid the injury was as late as that of the defendant, how can it be said that the defendant had the last clear chance of avoiding it?" See, also, *Evansville, etc., Traction Co. v. Johnson* (1913), 54 Ind. App. 601, 97 N. E. 176, and *Robards v. Indianapolis St. R. Co.* (1904), 32 Ind. App. 297, 302, 66 N. E. 66, 67 N. E. 953.

The doctrine of last clear chance contemplates a peril which a defendant knowing can avoid by the use of reasonable care. Continued negligence of appellee would be a defense unless the motorman in charge of the car knew the peril created by such negligence in time so that, by the use of reasonable care, he could have prevented the injury. The omission of the element of knowledge makes the giving of this instruction reversible error.

Complaint is made of the giving of instruction No. 6, given at the request of the appellee, and of No. 2, given by the court on its own motion. In instruction No. 6, the court told the jury that:

5. "At the time of the accident the defendant company did not have the exclusive right to the use of Franklin street in the city of Evansville, Indiana, at the point of collision with the plaintiff's vehicle, or any other part thereof, but the rights of the defendant company and of the plaintiff were equal."

In instruction No. 2, given by the court on its own motion, the jury is told that: "Since street cars cannot leave the tracks and turn out and the convenience of the public demands that the street cars be run with-

out unnecessary delay, they are entitled to the precedence which the necessity of the situation required between street crossings while being run along and upon their tracks in the streets of cities.

In the consideration of these instructions, we must keep in mind the fact that the point of the collision was midway between street crossings, and not at a street crossing. It is true that street railway companies have no superior and predominant right to the use of the streets upon which their tracks are located over rights of other users, except the paramount right of way when they require it. Appellant had no right to exclude the appellee from its tracks upon the street, but it did have the right to require him to remove therefrom when he was informed or notified that the same was needed for the passage of one of its cars. In this respect their rights were not equal. *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942; *Kerr* v. *Boston Elevated R. Co.* (1905), 188 Mass. 434, 74 N. E. 669; *Daniels* v. *Bay City Traction, etc., Co.* (1906), 143 Mich. 493, 107 N. W. 94; *Buttelli* v. *Jersey City, etc., R. Co.* (1896), 59 N. J. Law 302, 36 Atl. 700; *Fleckenstein* v. *Dry Dock, etc., R. Co.* (1887), 105 N. Y. 655, 11 N. E. 951; *Ehrisman* v. *East Harrisburg, etc., R. Co.* (1892), 150 Penn. 180, 24 Atl. 596, 17 L. R. A. 448; *O'Connor* v. *United Railroads, etc.* (1914), 168 Cal. 43, 141 Pac. 809; *Ford's Admr.* v. *Paducah City Ry.* (1907), 124 Ky. 488, 99 S. W. 355, 8 L. R. A. (N. S.) 1093, 124 Am. St. 412; *Hot Springs St. R. Co.* v. *Johnson* (1897), 64 Ark. 420, 42 S. W. 833.

This court, in *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687, 695, 68 N. E. 609, in commenting upon the right of a traveler on a street, said:

"He was not a trespasser. He was on a street rail-way track in a public street, with as much right as the railway company. * * * If he had known of the approach of the car it would have been his duty to have attempted to get off the track."

In view of the fact that the appellant's cars run on a fixed track, and of the fact that they are run for the convenience of the public, it may be said that appellant had a paramount or superior right of way over its tracks between street crossings, whenever its rights conflict with the rights of a traveler on the street, to the extent that the traveler must reasonably give way to an approaching car when he knows it is approaching and desires to pass such traveler. *Ehris-man* v. *East Harrisburg, etc., R. Co., supra; Ford's Admr.* v. *Paducah City Ry., supra.*

Instruction No. 6 is not borne out by the authori-ties, and should not have been given. It is also in conflict with No. 2, given by the court on its own motion. The latter instruction is correct, although it probably would have been better had the court ex-plained to the jury the circumstances under which a street railway had the paramount right of passage.

The cause must be reversed for the giving of in-struction No. 16, given at the request of the appellee. Judgment reversed, with instructions to grant a new trial.